# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| PWR INVEST, LP, et al.,[1] | ) | |
| | ) | Case No. 19-11164 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DECLARATION OF CLARK ANSEL IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS FOR THE DEBTORS

I, Clark Ansel, make this declaration pursuant and state:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees "FTI"), a financial advisory services firm with numerous offices throughout the country.  I submit this Declaration on behalf of FTI (the "Declaration") in support of the application (the "Application") of Oklahoma Merge, L.P., the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for an order authorizing the employment and retention of FTI as financial advisors under the terms and conditions set forth in the Application. Except as otherwise noted[2], I have personal knowledge of the matters set forth herein.

2.      The Debtors understand that FTI has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors throughout the United States.  The FTI Personnel

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Oklahoma Merge, LP (1308), Oklahoma Merge Midstream, LP (8433), Oklahoma River Basin, LP (0385), PWR Oil & Gas General Partners, Inc. (4963), and PWR Invest, LP (7429). The mailing address for the Debtors is: 3710 Rawlins St., Suite 1100, Dallas, Texas 75219, with copies to Pronske & Kathman, P.C., c/o Jason P. Kathman, 2701 Dallas Pkwy, Suite 590, Plano, Texas 75093 and Barnes & Thornburg LLP, c/o Kevin G. Collins, 1000 N. West Street, Suite 1500, Wilmington, Delaware, 19801.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

specialize in interim management, restructuring advisory services, turnaround consulting, operational due diligence, creditor advisory services, and performance improvement. FTI's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a company's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

3.      FTI possesses extensive knowledge and expertise in the areas of bankruptcy and financial matters relevant to these chapter 11 cases and is well qualified to serve as the Debtors' financial advisor. In selecting FTI, the Debtors sought an advisor with experience in providing similar services in complex cases. FTI employs seasoned professionals, such as the FTI Personnel, with relevant experience to assist distressed companies with financial and operational challenges, and FTI regularly assists middle market, large and complex businesses similar to the Debtors.

4.      I have over 12 years of corporate recovery, financial advisory and interim management experience. I have corporate recovery and financial advisory expertise in oil and gas upstream, energy, oil field services, retail, manufacturing, and food and protein, among other industries. I have advised numerous clients with regard to debtor in possession financings, covenant negotiations, bankruptcy preparation, asset sales, avoidance actions and litigation support matters. I have been involved in numerous chapter 11 cases including, among others, TXCO Resources, C&J Energy Services, Forbes Energy Services, Vanguard Natural Resources, Samson Resources, Energy and Exploration Partners, Swift Energy, Parker Drilling and Weatherford.

5.      Prior to joining FTI Consulting, I worked in corporate finance at AT&T and held multiple positions at Trinity Industries, a large publicly traded steel manufacturing company.  I have an M.B.A. from the Cox School of Business at Southern Methodist University and a B.S. in Communication Studies from the University of Texas at Austin.  I am a certified insolvency and restructuring advisor and a certified turnaround professional.

6.      The FTI Personnel and I have worked closely with the Debtors' management and other advisors since May of 2019.  Since that time, the FTI Personnel and I have assisted the Debtors with a broad range of strategic, operational, financial, restructuring, and bankruptcy related matters.  As a result, FTI has developed institutional knowledge regarding the Debtors' operations, financial affairs, and systems.  Such experience and knowledge will be valuable to the Debtors in connection with the administration of the chapter 11 cases and the Debtors' efforts to reorganize their business.

7.      Based on FTI's experience, knowledge, and familiarity with the Debtors' business, FTI is both well qualified and suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases.  Accordingly, the Debtors submit that the employment of Mr. Ansel and the performance of related services by the FTI Personnel is in the best interests of the Debtors, their estates, and all parties in interest and should be approved.

### Disinterestedness and Eligibility

8.      In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI.  A listing of the parties reviewed is reflected on **Schedule 1** to this Declaration.  FTI's review, completed under my supervision, consisted of a query of the Schedule 1 parties within an internal computer database

containing names of individuals and entities that are present or recent former clients of FTI.  A summary of such relationships that FTI identified during this process is set forth on **Schedule 2** to this Declaration.

9.      Based on the results of its review, FTI does not have a relationship with any of the parties on Schedule 1 in matters related to these proceedings.  FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Schedule 2.  FTI's assistance to these parties has been related to primarily providing various financial restructuring and litigation support services. To the best of my knowledge, no services have been provided to these parties in interest which involve their rights in the Debtors' cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

10.     Further, as part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

11.     FTI does not believe it is a "Creditor" with respect to fees and expenses of any of the Debtors within the meaning of Section 101(10) of the Bankruptcy Code. Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtors' stock.

12.     FTI has not reviewed the relationship that the members of the FTI engagement team may have against a comprehensive list of employees within the U.S. Trustee's office in this District, but will do so upon being provided with a list of such persons by the office of the U.S. Trustee.

13.     As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI:

    (a)     is not a creditor, equity security holder or insider of the Debtors;

    (b)     is not and was not an investment banker for any outstanding security of the Debtors;

    (c)     has not been, within three years before the date of the filing of the Debtors' chapter 11 petitions, (i) an investment banker for a security of the Debtors or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

    (e)     was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors within the meaning of Section 327(a) of the Bankruptcy Code.

14.     It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or relationships are discovered or arise, FTI will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

## **Professional Compensation**

15.     Subject to Court approval and in accordance with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, applicable U.S. Trustee guidelines and the local rules of this District, FTI will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by FTI. FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application for the employment of FTI. These hourly rates are adjusted annually.

16.     According to FTI's books and records, during the ninety day period prior to the Debtors' petition date, FTI received $320,792.12 from the Debtors for professional services performed and expenses incurred. Further, FTI's current estimate is that it has received unapplied advance payments from the Debtors in excess of pre-petition billings in the amount of $107,585.98. The Debtors and FTI have agreed that any portion of the advance payments not used to compensate FTI for its pre-petition services and expenses will be held and applied against its final post-petition billing and will not be placed in a separate account.

17.    To the best of my knowledge, a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: September 5, 2019

_____
Clark Ansel

## <u>Schedule 1</u>

## **Listing of Parties-in-Interest Reviewed for Current Relationships**

**<u>Debtors</u>**
PWR INVEST, LP
PWR OIL & GAS GENERAL PARTNERS, INC.
OKLAHOMA MERGE, LP (f/k/a GAEDEKE MERGE, LP)
OKLAHOMA MERGE MIDSTREAM, LP (f/k/a GAEDEKE MERGE MIDSTREAM, LP)
OKLAHOMA RIVER BASIN, LP (f/k/a GAEDEKE RIVER BASIN, LP)

**<u>Non-Debtor Affiliates</u>**
Gaedeke Group, LLC
Gaedeke Energy, LLC
Gaedeke Oil & Gas Operating, LLC
Gaedeke Holdings VII, Ltd.

**<u>Directors and Officers</u>**
Mark Reed
Glenn Lickstein

**<u>Equity Holders</u>**
PWR Invest, Inc.
O1HOM GmbH
OHOS GmbH
GSJS Foresight Invest LP
Gaedeke Immobilien Gmbh

**<u>Senior Lenders</u>**
Chambers Energy Management, LP

**<u>Debtor's Counsel</u>**
Barnes & Thornburg LLP
Pronske & Kathman, P.C.

**<u>Lender's Counsel</u>**
Latham & Watkins LLP

**<u>Lender's Professionals</u>**
Opportune LLP

**<u>Depository Banks</u>**
BOKF, N.A.
Northern Trust, N.A.

**<u>Top 20 Unsecured Creditors</u>**
Gaedeke Holdings VII, Ltd.
Gaedeke Oil Gas Operating, LLC
Roan Resources
Grande Oil & Gas Inc.
Jones Energy, LLC
Phillips Murrah P.C.
Continental Resources, Inc.
Merrill Corporation
Mahaffey & Gore, P.C.

Newfield Exploration Mid-Continent, Inc.
Cimarex Energy Co.
Latham & Watkins LLP
Marathon Oil Co.
Echo E&P, LLC
Red Rock Oil & Gas Operating, LLC

**<u>Operators</u>**
Newfield Production Company
Citizen Energy II
Gulfport Midcon LLC
Linn Operating Inc.
Travis Peak Resources LLC

**<u>Insurance Companies, Brokers, Financers</u>**
Alliant Insurance Services, Inc.

**<u>Litigation Parties</u>**
HLR OIL & GAS, LLC
Jones Energy (Bankruptcy)
Stamp Brothers Oil and Gas, LLC
Lawrence E. Betche, Trustee and Marilyn Wagstaff Moss

**<u>Taxing Authorities</u>**
Oklahoma Tax Commission
United States Treasury

**<u>Bankruptcy Judges</u>**
Hon. John T. Dorsey

## Schedule 2

### Parties-in-Interest Noted for Court Disclosure

**Relationships in Matters Related to These Proceedings**

None

**Relationships in Unrelated Matters**

Alliant Insurance Services, Inc.
BOKF, N.A.
Cimarex Energy Company
Continental Resources, inc.
Marathon Oil Company
Northern Trust, N.A.
Latham & Watkins LLP
Barnes & Thornburg LLP

# EXHIBIT B-1

**FTI Engagement Letter**

PRIVATE & CONFIDENTIAL

May 15, 2019

Gerrit M. Pronske
Pronske & Kathman, P.C.
2701 Dallas Pkwy., Suite 590
Plano, TX 75093

Re: Gaedeke Merge, LP

Dear Gerrit:

1. **Introduction**

   This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Pronske & Kathman, P.C. (the "Firm"), to provide certain financial advisory and consulting services (the "Services") as set forth below in relation to your representation of Gaedeke Merge LP ("Gaedeke" or the "Company"). This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2. **Scope of Services**

   The Services, to be performed at your direction, are expected to include the following:

   **Financial Advisory Services (as needed and requested by you or the Company):**

   - Rendering general financial advice, financial analytics and financial modeling in support of negotiations with creditors;
   - Assisting in the development and analysis of various strategic alternatives available to the Company;
   - Assisting in determining potential creditor recoveries under alternative scenarios;
   - Assisting with evaluating the Company's cash flows under a variety of scenarios;
   - Attending meetings, presentations and negotiations as may be requested by the Company;
   - Assisting with treasury operations, cash management, cash forecasting, and management of receivables and payables, as needed; and
   - Providing other services as requested by the Company.

   **Contingency Planning:**

   - Assisting with sizing and securing DIP financing, as needed;
   - Assisting with developing accounting and operating procedures to segregate prepetition and post-petition business transactions;

Pronske & Kathman
May 15, 2019

- Supporting the preparation of first day motions and developing procedures and processes necessary to implement such motions;
- Assisting with the development of a creditor matrix
- Working with the Company and its communications advisors to develop chapter 11 communications, as requested;
- Assisting with developing a process and infrastructure to respond to and track calls received from suppliers, employees and other constituents;
- Assisting in the identification of executory contracts and unexpired leases and performing the cost/benefit evaluations with respect to the assumption or rejection of each, as needed;
- Preparing the Company with respect to financial disclosures that will be required by the Court;
- Assisting with the review, classification, and quantification of claims against the estate under the plan of reorganization, and;
- Rendering such other restructuring and general business consulting or such other assistance for the Company as the Company's management or counsel may request.

**Restructuring Services: If the Company files one or more petitions for chapter 11, FTI will expand its scope of services to include all necessary services as financial advisor to the Company throughout the restructuring, including but not limited to the following:**

- Preparation of the Schedules of Assets and Liabilities, Statement of Financial Affairs and all other required reporting to the bankruptcy court;
- Assist the Company in implementation of all First Day Motions;
- Ongoing assistance with cash management and reporting as required by creditors and the court;
- Assist the Company and counsel in preparing required motions throughout the course of the cases;
- Respond to all creditor groups throughout the restructuring process;
- Assist in negotiations and development of a plan of reorganization and disclosure statement;
- Assisting with fresh-start accounting planning and implementation; and
- Assist legal counsel in drafting all plan documents;

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by you to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of

Pronske & Kathman
May 15, 2019

directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist you or the Company (and its other legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.  **Privileged and Confidential Work Product**

To the extent possible, written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential". Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without your permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you that are identified as confidential.

4.  **Fees**

Our fees for the Services set forth above for the Engagement Personnel will be based on the actual hours expended at our standard hourly rates that are in effect when the Services are rendered. Our rates are typically revised annually. Our current hourly rates are as follows:

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $895 - 1195 |
| Directors / Senior Directors / Managing Directors | $670 - 880 |
| Consultants/Senior Consultants | $355 - 640 |
| Administrative / Paraprofessionals | $145 - 275 |

Pronske & Kathman
May 15, 2019

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement. Allocated expenses include the cost of items which are not billed directly to the engagement but are incurred centrally, including out-of-pocket costs for data services and research materials which FTI subscribes to that we expect to use on your engagement, copying, phone charges, and other overhead expenses that are not billed through as direct reimbursable expenses and are calculated at 6.0% of FTI's fees as described above. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Early Success Fee:**

In addition, the Company agrees to pay an incentive bonus ("**Early Success Fee**") if FTI successfully negotiates and the Company approves and enters into an agreement to permanently restructure the debt with Chambers Energy Management, LP, ("**Chambers**") under that certain Credit Agreement, out of court (including without limitation, prior to any Chapter 11 restructuring proceeding).

FTI shall be entitled to the Early Success Fee, if any, in the following amount:

- 3% of any outstanding principal debt that Chambers converted to equity;
- 6% of any amount of debt forgiveness; and
- For any agreed upon reduction of the all-in non-default interest rate ((i.e. Libor + 13%; 9% cash, 4% PIK) the following formula shall apply: delta interest rate/ remaining loan amount = basis points x \$10,000 (Example: interest expense is reduced by 10% points (1,000 basis points) and the remaining loan balance after negotiations is \$40 million = 1,000/40 = 25  points x \$10,000 = \$250,000.)

The hourly rate references herein shall credited against any Early Success Fee.

Notwithstanding anything herein to the contrary, the Company shall not be obligated to pay an Early Success Fee to FTI or the Firm,  if the Company restructures the debt with Chambers pursuant to a bankruptcy proceeding.

<u>**Cash on Account**</u>

Initially, the Company will forward to us the amount of \$150,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain

Pronske & Kathman
May 15, 2019

circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that it will pay FTI has earned and will be entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Pronske & Kathman
May 15, 2019

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

5.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

6.    **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company, the lender(s) and other potential creditors. As you are aware, FTI is regularly retained by lenders or law firms retained by the lenders or other potential creditors. However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

7.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Bert Conly at 214-397-1604.

Yours faithfully,

Pronske & Kathman
May 15, 2019

FTI CONSULTING, INC.

By: _____

Albert S. Conly
Senior Managing Director

Attachment – As stated

Pronske & Kathman
May 15, 2019

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Pronske & Kathman

By: _Gerrit Pronee_

Gerrit M. Pronske
Partner

Date: _5/16/19_

Gaedeke Merge, LP

By: PWR Oil & Gas General Partners, Inc., its General Partner

By: _[signature]_

Mark Reed, President

Date: _5-16-19_

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated May 15, 2019. The engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of you and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither you nor the Company shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3.  **Additional Services**

3.1    **Responsibility for other parties** – You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

4.    **Confidentiality**

4.1    **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

   4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

   4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

   4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, only upon the Company's prior written approval can we cite the performance of the Services to our clients and prospective clients as an indication of our experience.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

5.  **Termination**

5.1    **Termination of Engagement with notice** – All parties (you, the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2   **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.   Indemnification and Liability Limitation**

6.1   **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2   **Limitation of liability** - You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7.   Governing Law, Jurisdiction and WAIVER OF JURY TRIAL**

7.1   **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2   **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3   **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Pronske & Kathman

By: _Gerrit Pronske_

Gerrit M. Pronske
Partner

Date: _Gerrit Pronske_    5/29/19

Gaedeke Merge, LP

By: PWR Oil & Gas General Partners, Inc., its General Partner

By: _[signature]_

Mark Reed, President

Date: _5-17-19_