## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PWR INVEST, LP, *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11164 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. 155**<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

### DEBTORS' MOTION TO COMPEL PRODUCTION AND EXAMINATION AND FOR CONTINUATION OF HEARING ON CHAMBERS' MOTION TO DISMISS

Oklahoma Merge, LP ("Merge") and its debtor affiliates (collectively, the "Debtors") respectfully file this Motion to Compel Production and Examination and Request for Continuation of Hearing on Chambers' Motion to Dismiss (the "Motion"), pursuant to Federal Rule of Civil Procedure 37, and in support thereof would show the Court as follows:

### I.    BACKGROUND

1.    Before the Debtors took their first deposition of a Chambers witness in this case, Chambers produced an email dated July 24, 2018, from Cedric Burgher to Robert Hendricks, indicating that Chambers maintained an internal "model" that projected anticipated future defaults by Merge under the Credit Agreement at the center of this case. (**Ex. A** – 07.24.18 Email). Among other things, the email indicated that Chambers' "model" showed that that Merge would "never meet the 1.2x Collateral Coverage Ratio" – one of Merge's financial covenant obligations under the Credit Agreement. (*Id.*). This was particularly important because, at the time the email was sent, Chambers and Merge were negotiating what became the Second Amendment to the Credit Agreement. In its final form, the Second Amendment included the 1.2x Collateral Coverage Ratio

that Chambers' internal "model" projected Merge would "never" be able to meet. (**Ex. B** – 2d Amendment).

2.      During a conference call with the Court on October 15, 2019, Debtors' counsel asked the Court to compel production of the model. Counsel for Chambers represented to the Court that the model was a "valuation" document that would be a distraction from the issues at stake on Chambers' Motion to Dismiss [D.I. 155]. Based upon those representations, the Court declined to order production of the model at that time.

3.      Later the same afternoon, however, Debtors' counsel took the deposition of Robert Hendricks, Chambers' 30(b)(6) corporate representative on Topic No. 25:

> 25.    Any credit monitoring or risk management by You with respect to the Credit Agreement, the Debtors, or the Collateral.

(**Ex. C** – Dep. Notice). During that deposition, Mr. Hendricks confirmed that as part of its credit monitoring and risk management under the Credit Agreement, Chambers maintained projections as to whether or not Merge would default on its covenants obligations. (**Ex. D** – Hendricks Dep. At 125-26.). Mr. Hendricks also specifically confirmed that the "model" referred to in the July 24, 2018 email is maintained as part of Chambers' credit monitoring and risk management under the Credit Agreement. (*Id.*). Yet despite being Chambers' designated corporate representative on the topic, Mr. Hendricks had not refreshed himself on the model prior to deposition and was not able to provide any substantive testimony about it.

4.      Due to Mr. Hendricks's complete failure to prepare on Topic No. 25, Chambers offered to have a second witness, Robert Chambers, testify as its corporate representative on Topic No. 25, and about the model, the next day, October 16, 2019. Chambers continued to refuse to produce the model itself, however. During the deposition on Topic No. 25, Mr. Chambers testified

that he had reviewed the model the night before testifying. (**Ex. E** – Chambers Dep. at 67-68). Based on that testimony, and the witness's reliance on a document Debtors' counsel had not been given a chance to see, Debtors' counsel renewed their request for the model during a telephonic hearing with the court at 1:00 p.m. the same day – while Mr. Chambers was still testifying.

5.       The Court granted Debtors' request in the plainest possible terms, instructing that Debtors' counsel were entitled to receive and examine Chambers' witness on "**whatever he looked at to prepare for his deposition.**" (**Ex. F** – Hearing Tr. at 14). The Court was crystal clear that it was ordering "**production of the model**" on the grounds that "**if you're relying on a document to prepare for your testimony, the other side's entitled to see it.**" (*Id.* at 13).

6.       Despite the Court's unambiguous instructions, Chambers' attorneys produced only a *redacted* version of the model following the telephonic hearing. (**Ex. G** – Redacted Model). During his continued deposition, Mr. Chambers confirmed that he had reviewed the *unredacted* model in preparing for his deposition, and that none of the redacted information concerned other loans (*i.e.*, loans other than the Credit Agreement between Merge and Chambers). Mr. Chambers's testimony also made clear that the model was not, in any sense, a "valuation" of the Debtors, as had been represented to the Court, but instead a continuously updated model incorporating data about Merge's past performance and projecting Merge's future performance, including Chambers' expectations about whether Merge would or would not be able to meet its financial covenants.

## II.       ARGUMENT

7.       The full, unredacted model is discoverable under a constellation of rules, including Federal Rules of Civil Procedure 26 and 30(b)(6) and Federal Rule of Evidence 612 (regarding writings used to refresh a witness's recollection). Most importantly, however, its production was *actually ordered* by this Court in no uncertain terms during the October 16, 2019 telephonic

hearing. In producing a redacted version of the exhibit that its witness used to prepare for deposition, Chambers simply flouted the Court's instruction to produce "whatever [the witness] looked at to prepare for his deposition." And it did so in a way that was intended to and did in fact impede Debtors' counsel's ability to effectively cross-examine Chambers' witness on an exhibit that Chambers has confirmed: (1) falls squarely within the designated topic for corporate representative testimony; and (2) was actually relied upon by Chambers' witnesses to prepare for deposition.

8.      The model is plainly relevant to these proceedings and to the Court's resolution of Chambers' Motion to Dismiss. The model is nothing less than Chambers' own analysis of Merge's past and anticipated future performance under the Credit Agreement, which obviously is relevant to the ability of Debtors' current management to conduct the business of the company both during and after bankruptcy. The model is also relevant to the question of good faith, as it strongly indicates that Chambers, in its own words, "never" expected Merge to be able to meet its covenant obligations, even while negotiating amendments to the Credit Agreement that contained the very same metrics Chambers projected Merge would "never" meet.

9.      Because of Chambers' conduct with respect to the model – which it is obviously desperate not to produce – Chambers should be required to produce its designated corporate representative, Mr. Robert Chambers, for a second deposition at Chambers' expense at Debtors' counsel's office in Dallas, Texas. Chambers should also be required to produce the *unredacted* model in advance of that deposition. And the Court should continue the October 23, 2019 hearing currently scheduled on Chambers' Motion to Dismiss long enough to allow the parties to complete that additional discovery. Chambers had ample opportunity to produce this evidence in time to complete discovery before the scheduled hearing, but for its own reasons chose to impede

discovery in plain violation of this Court's instructions. The requested relief is appropriate and proportional under the circumstances.

10.    To the extent that Chambers argues that this Court must commence the Motion to Dismiss within thirty (30) days of filing, the Bankruptcy Code expressly provides that the Court may hold a hearing after the thirtieth day is the movant consents "<u>or compelling circumstances prevent the court from meeting the time limits established by this paragraph</u>." *See* 11 U.S.C. § 1112(b)(3)(emphasis added). Courts have held that compelling circumstances to continue a trustee motion exists when the ruling would have significant consequences to the parties and deserved comprehensive review and analysis. *See In re Wolper Const. Co., Inc.*, 2009 W.L. 2882824 at *2 (Bankr. D. Utah Sept. 2, 2009). In this case, the parties have worked at a break-neck pace to complete substantial discovery (six depositions and over 50,000 pages of documents production) only to have Chambers intentionally defy this Court's order and withhold perhaps one of the most relevant documents in the case. As explained above, the model is squarely relevant and this Court directly ordered its production. Chambers not only withheld the model once, but withheld the model twice. Accordingly, a party's failure to comply with discovery, and more directly failure to comply with this Court's order, constitutes "compelling circumstances" such that the Court should continue the hearing on the Motion to Dismiss.

### III.    CONCLUSION

For the foregoing reasons, Debtors request that the Court: (1) order Chambers to produce the unredacted model; (2) order Chambers to make its designated representative, Robert Chambers, available for a second deposition at Debtors' counsel's offices in Dallas, Texas, at Chambers' expense; and (3) continue the October 23, 2019 hearing until such time as the ordered discovery can be completed.

Dated: October 21, 2019
      Wilmington, Delaware

BARNES & THORNBURG LLP

*/s/ Kevin G. Collins*
David M. Powlen (DE No. 4978)
Kevin G. Collins (DE No. 5149)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
Email: David.Powlen@btlaw.com
Email: Kevin.Collins@btlaw.com

PRONSKE & KATHMAN, P.C.

Gerrit M. Pronske (*pro hac vice*)
Jason P. Kathman (*pro hac vice*)
Brandon J. Tittle (*pro hac vice*)
2701 Dallas Parkway, Suite 590
Plano, TX 75093
Telephone: (214) 658-6500
Facsimile: (214) 658-6509
Email: gpronske@pronskepc.com
Email: jkathman@pronskepc.com
Email: btittle@pronskepc.com

*Co-Counsel for the Debtors and Debtors-in-Possession*

-and-

MCCATHERN, PLLC

Levi G. McCathern, II (*pro hac vice*)
James E. Sherry (*pro hac vice*)
3710 Rawlins St., Suite 1600
Dallas, TX 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717
Email: lmccathern@mccathernlaw.com
Email: jsherry@mccathernlaw.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

## **CERTIFICATE OF CONFERENCE**

I, the undersigned, hereby certify that I have personally conferred with counsel for Chambers regarding this subject matter of this Motion. As of the date of filing, the parties have been unable to reach agreement on the matters presented.

*/s/ James E. Sherry*