# EXHIBIT 1

## Bid Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>PWR INVEST, LP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11164 (JTD)<br>(Jointly Administered)<br><br>Re: D.I. \_\_\_\_ |

**BIDDING PROCEDURES
FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

On June [ ● ], 2020, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered the *Order (A) Establishing Bidding Procedures; (B) Establishing Assumption and Assignment Procedures, Including Notice of Proposed Cure Amounts; (C) Authorizing and Approving the Selection of a Stalking Horse Bid; (D) Scheduling Auction and Sale Hearing; (E) Approving Form and Manner of Notice of all Procedures, Schedules, and Agreements; and (F) Granting Certain Related Relief* [Docket No. [ ● ]] (the "**Bidding Procedures Order**"),[2] by which the Court approved the following procedures. These Bidding Procedures set forth the process by which the Trustee is authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") or other transaction ("**Transaction**") regarding substantially all or a portion of the Debtors' assets (collectively, the "**Assets**").[3]

1. **Submissions to the Trustee.**

All submissions to the Trustee required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "**Bid Notice Parties**"):

    A.    **Chapter 11 Trustee.** The Trustee, Michael A. McConnell, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Michael

---

[1] The Debtors in these chapter 11 cases (collectively, the "**Cases**"), together with the last four digits of each Debtor's federal tax identification number, are as follows: Oklahoma Merge, LP (1308), Oklahoma Merge Midstream, LP (8433), Oklahoma River Basin, LP (0385), PWR Oil & Gas General Partners, Inc. (4963), and PWR Invest, LP (7429). The mailing address of the Chapter 11 Trustee is Kelly Hart & Hallman LLP, Attn: Michael A. McConnell, Esq., 201 Main Street, Suite 2500, Fort Worth, TX 76102, with copies to Kelly Hart & Hallman LLP, c/o Nancy L. Ribaudo, 201 Main Street, Suite 2500, Fort Worth, TX 76102 and Morris, Nichols, Arsht & Tunnell LLP, c/o Derek C. Abbott and Joseph C. Barsalona II, 1201 North Market Street, Suite 1600, Wilmington, DE 19801.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3] For the avoidance of doubt, these Bidding Procedures are subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral.

      A. McConnell (michael.mcconnell@kellyhart.com).

    B. **Chapter 11 Trustee's Counsel.** Counsel to the Trustee, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Nancy Ribaudo (nancy.ribaudo@kellyhart.com).

    C. **Chapter 11 Trustee's Co-Counsel.** Co-Counsel to the Trustee, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Derek C. Abbott (dabbott@mnat.com) and Joseph C. Barsalona II (jbarsalona@mnat.com).

2. **Key Dates.**

The key dates for the sale process are as follows, each of which may be extended in the reasonable business judgment of the Trustee:

    **(a) Key Proposed Auction and Sale-Related Dates (subject to the Court's availability):**

| Event | Proposed Date |
|---|---|
| Deadline to file and serve the Sale Notice on Transaction Notice Parties | Within three days of entry of Bidding Procedures Order |
| Sale Objection Deadline (*e.g.*, deadline for objecting to sale to a Stalking Horse Bidder) | June 17, 2020 at 4:00 p.m. (Eastern Daylight Time) |
| Bid Deadline | June 19, 2020 at 5:00 p.m. (Central Daylight Time) |
| Auction (if necessary) | June 22, 2020 at 10:00 a.m. (Central Daylight Time) |
| Deadline to file and serve notice of Successful Bidder and amount of Successful Bid | No later than noon the calendar day after the Auction is completed |
| Supplemental Sale Objection Deadline (*e.g.*, deadline for objecting to sale to a Successful Bidder that is not a Stalking Horse Bidder) | Two (2) hours prior to the commencement of the Sale Hearing |
| Sale Hearing | June 24, 2020 at 2:00 p.m. (Eastern Daylight Time) |

    **(b) Key Dates Related to Proposed Assumption and Assignment Procedures (subject to the Court's availability):**

2

| Event | Proposed Date |
|---|---|
| Deadline for objecting to sale to Stalking Horse Bidder | June 17, 2020 at 4:00 p.m. (Eastern Daylight Time) |
| Deadline for objecting to sale to Successful Bidder (other than Stalking Horse Bidder) | Two (2) hours prior to the commencement of the Sale Hearing |
| Adequate Assurance Objection Deadline; Sale Hearing | June 24, 2020 at 2:00 p.m. (Eastern Daylight Time) |

3. **Potential Bidders.**

Other than with respect to the First Lien Agent and First Lien Lenders (together, the "**Prepetition Lenders**") in the case of a Qualified Credit Bid (as defined below), to participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (a "**Potential Bidder**") must deliver or have previously delivered to the Bid Notice Parties the following documents:

(i) an executed confidentiality agreement on terms acceptable to the Trustee (a "**Confidentiality Agreement**"), to the extent not already executed;

(ii) identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction;

(iii) unless publicly available in a filing under applicable securities laws or regulations, the most current audited and latest unaudited financial statements (the "**Financials**") of the Potential Bidder or any such other form of financial disclosure or credit-quality support information demonstrating that such Potential Bidder has the ability to close the Sale.

4. **Qualified Bidders.**

(a) A "**Qualified Bidder**" is a Potential Bidder who satisfies the Bidding Procedures and whose Financials, the Financials of its equity holder(s), or whose written commitments, as applicable, demonstrate the financial capability to consummate the Sale, and, as applicable, whose Bid is a Qualified Bid and that the Trustee determines should be considered a Qualified Bidder. Within one business day following the Bid Deadline, the Trustee's advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.

(b) If any Potential Bidder is determined by the Trustee not to be a Qualified Bidder, the Trustee will refund such Qualified Bidder's Deposit (as defined herein) and all

3

    accumulated interest thereon on or within ten (10) business days after the Bid Deadline.

 (c) Between the date that the Trustee notifies a Potential Bidder that it is a Qualified Bidder and the Auction, the Trustee may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

 (d) For purposes of these Bidding Procedures, the First Lien Agent and First Lien Lenders shall be deemed a Qualified Bidder.

**5. Due Diligence.**

 Only those Potential Bidders whose Financials, the Financials of their equity holder(s), or whose written commitments, as applicable, demonstrate the financial capability to consummate the Sale shall be eligible to receive due diligence information. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Trustee will provide or cause to be provided to each Potential Bidder that satisfies the foregoing reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request. For all Potential Bidders, the due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline, the Trustee shall have no obligation to furnish any due diligence information.

 Neither the Trustee nor the Debtors shall furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Trustee and his advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided*, that the Trustee may decline to provide such information to Potential Bidders who, at such time and in the Trustee's reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale. For the avoidance of doubt, the Stalking Horse Bidder shall be granted access to diligence materials.

 The Trustee also reserves the right to withhold any diligence materials that the Trustee determines are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Trustee determines is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Trustee, the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder that intends in good faith to, or has the capacity to, consummate the Sale.

   **All due diligence requests must be directed to Kelly Hart & Hallman LLP, 201 Main**

**Street, Suite 2500, Fort Worth, Texas 76102, Attn: Nancy Ribaudo (nancy.ribaudo@kellyhart.com).**

(a)  **Communications with Potential Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications between and amongst Potential Bidders shall involve the Trustee and the Trustee's advisors, to the extent reasonably practicable.

(b)  **Due Diligence from Potential Bidders.**

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Trustee or his advisors regarding the ability of the Potential Bidder to consummate the Sale or discussions with other Potential Bidders regarding any topic and with any party regarding the Debtors (and their non-Debtor affiliates) and/or any of the Assets. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Trustee to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.

The Trustee and each of his respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Trustee and the Trustee's advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Trustee; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

6.  **Bid Requirements.**

A proposal, solicitation, or offer for a purchase and sale of one or more individual Assets or all or substantially all of the Assets or for an alternative acquisition transaction (including a chapter 11 plan) (each, a "**Bid**") by a bidder that is submitted in writing and satisfies at least each of the following requirements (the "**Bid Requirements**"), as determined by the Trustee, in his reasonable business judgment, shall constitute a "**Qualified Bid;**" *provided*, that, if the Trustee receives a Bid before the Bid Deadline that is not a Qualified Bid, the Trustee may provide the bidder with the opportunity to remedy any deficiencies before the Auction in order to render such Bid a Qualified Bid; *provided*, *further*, that for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access requested by the Trustee to the satisfaction of the Trustee, the Trustee may disqualify any Qualified Bidder and Qualified Bid and such Qualified Bidder will not be entitled to attend or participate in the Auction; *provided*, *further*, that the Stalking Horse Bid will

5

constitute a Qualified Bid.  The Trustee may also waive or modify any of the above requirements in the exercise of his reasonable business judgment.

**(a)** **Assets.**  Each Bid must clearly state which assets and liabilities of the Debtors that the bidder is agreeing to purchase and assume.

**(b)** **Purchase Price.**  Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for each individual Asset subject to the applicable asset package (including assumed liabilities), including and identifying separately any cash and non-cash components (the **"Purchase Price"**).

**(c)** **Deposit.**  On or before the Bid Deadline, each Bid, other than a credit bid, must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate cash and non-cash Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Trustee (the **"Deposit"**).

**(d)** **Assumption of Obligations.**  Each Bid must clearly state which liabilities of the Debtors the bidder is agreeing to assume.  Except as otherwise provided in a purchase agreement to be executed by a successful Bidder, all of the Debtors' rights, title, and interest in and to the Assets subject thereto will be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests therein (collectively, **"Interests"**) to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.

**(e)** **Designation of Assigned Contracts and Leases.**  A Bid must identify any and all executory contracts and unexpired leases (collectively, "**Contracts**") of the Debtors that the bidder wishes to be assumed and assigned to the bidder at closing pursuant to a Sale, subject to modification as set forth in the Qualified Bid Documents (as defined below).

**(f)** **Adequate Assurances.**  A bidder must make a representation that it will be able to provide adequate assurance of future performance under any Contracts to be assumed and assigned under section 365 of the Bankruptcy Code, as well as written evidence that the Trustee believes to be sufficient to demonstrate the foregoing.

**(g)** **Qualified Bid Documents.**  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Transaction and/or Sale contemplated in the Bid and shall include a schedule of assumed contracts to the extent applicable to the Bid, as well as all other material documents integral to such Bid (the **"Qualified Bid Documents"**).  Such documents must be based on and marked against the Purchase Agreement (as defined below) and any other form documents provided by the Trustee.  Any modifications to the form of documents provided by the Trustee must be in form and substance acceptable to

the Trustee.

**(h)** **Committed Financing.** To the extent that a Bid is not accompanied by evidence of the bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution documented to the satisfaction of the Trustee that demonstrates that the bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Trustee.

**(i)** **Contingencies; No Financing or Diligence Outs.**  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Trustee in his business judgment.

**(j)** **Identity.**  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each parent company, equity holder or other financial backer of the applicable bidder), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that the Trustee and Kelly Hart & Hallman LLP should contact regarding such Bid.

**(k)** **Demonstrated Financial Capacity.**  A bidder must have, in the Trustee's business judgment, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

**(l)** **Time Frame for Closing.**  A Bid by a bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Trustee.

**(m)** **Binding and Irrevocable.**  A Bid shall be binding and irrevocable unless and until the Trustee accepts a higher Bid for such Asset and such bidder is not selected as the Backup Bidder, and the bidder's Deposit has been returned.

**(n)** **Expenses; Disclaimer of Fees.** Each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no bidder, including a

Qualified Bidder, will be permitted to request, nor be granted by the Trustee, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

**(o)** **Authorization.** Each Bid must contain evidence that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Trustee) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

**(p)** **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's Bid.

**(q)** **Adherence to Bid Procedures.** By submitting its Bid, each bidder shall be deemed to have agreed to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

**(r)** **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the bidder to consummate the Sale and/or Transaction, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the bidder will take to ensure receipt of such approvals as promptly as possible).

**(s)** **Bid Deadline.** Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** by the Trustee, the Stalking Horse Bidder, and the U.S. Trustee on or before 5:00 p.m. (Central Daylight Time) on June 19, 2020 (the **"Bid Deadline"**).

For the avoidance of doubt, each Bid that satisfies all of the afore-stated criteria in a manner acceptable to the Trustee, consistent with the exercise of his fiduciary duties, shall be deemed a Qualified Bid, and each bidder who submits a Qualified Bid shall be deemed a "Qualified Bidder". Notwithstanding anything to the contrary in this Motion, the Bidding Procedures, or the Bidding Procedures Order, the Qualified Credit Bid shall be deemed a Qualified Bid, and the Stalking Horse Bidder shall be deemed a Qualified Bidder.

8

7. **Right to Credit Bid.**

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, TO THE EXTENT THAT THE PREPETITION LENDERS MAKE A BID AT ANY TIME BEFORE THE CONCLUSION OF THE AUCTION (INCLUDING ANY BID INVOLVING A CREDIT BID OF ALL OR ANY PORTION OF THE PREPETITION LOAN OBLIGATIONS) (A "**QUALIFIED CREDIT BID**"), (I) THE PREPETITION LENDERS WILL CONSTITUTE QUALIFIED BIDDERS, AND ANY SUCH BID WILL CONSTITUTE A QUALIFIED BID, REGARDLESS OF THE FOREGOING REQUIREMENTS, (II) NO GOOD FAITH DEPOSIT WILL BE REQUIRED IN CONNECTION WITH A QUALIFIED CREDIT BID, (III) THE QUALIFIED CREDIT BID WILL NOT SERVE AS A BACKUP BID UNLESS THE PREPETITION LENDERS OTHERWISE AGREE, AND (IV) THE PURCHASE PRICE IN CONNECTION WITH A QUALIFIED BID SHALL BE VALUED BY THE TRUSTEE ON A DOLLAR-FOR-DOLLAR BASIS WITHOUT DEDUCTION, REDUCTION, OR OFFSET OF ANY KIND.

Any prepetition loan obligations that are credit bid as part of a Qualified Credit Bid will be treated as cash consideration at the face amount of such obligations for the purposes of calculating whether such Qualified Credit Bid is the Prevailing Highest Bid.  The Prepetition Lenders may credit bid, as a Qualified Bid or in a subsequent bid, in their sole and absolute discretion, any portion and up to the entire amount of the Prepetition Secured Obligations, *plus* post-petition interest, if any, that would be due and owing in accordance with the Cash Collateral Order if the Trustee selects an alternative bid as the Successful Bid, including as part or all of an Overbid, in accordance with the Auction procedures set forth herein.

Upon exercise of their Credit Bid, the Prepetition Lenders shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any assets, and shall have the right to designate any person or entity in their sole and absolute discretion that shall take title to any assets that are subject to the Credit Bid.  Except for the Prepetition Lenders, no other person may credit bid.

8. **Stalking Horse Bid**

The Trustee has entered into a purchase and sale agreement on behalf of the Debtors, by and between the Debtors and OM Properties, LLC (the "**Stalking Horse Bidder**"), dated June 3, 2020 (the "**Purchase Agreement**"), a copy of which was filed on June 3, 2020 [D.I. 506] and made available to interested parties, and shall serve as the form of purchase agreement and as the basis for bids in connection with this process.

The Purchase Agreement contemplates that the Stalking Horse Bidder will acquire substantially all of the Assets.  The Trustee will consider competing bids seeking to acquire one or more individual Assets or all or substantially all of the Assets, to the extent such bids comply with these Bid Procedures and the Bid Procedures Order.

9. **Auction.**

9

If the Trustee receives more than one Qualified Bid for an Asset, whether through a Bid for one or more individual Assets or through a Bid for all or substantially all of the Assets, the Trustee will conduct the Auction to determine the Successful Bidders with respect to such Asset or Assets, as applicable. If the Trustee does not receive a Qualified Bid for a given Asset, (i) the Trustee will not conduct the Auction as to such Asset, (ii) the Stalking Horse Bid shall be deemed the Successful Bid and the Stalking Horse Bidder shall be deemed the Successful Bidder (as defined below), and (iii) the Trustee shall proceed at the Sale Hearing and seek approval from the Court of the Stalking Horse Bid. To the extent Qualified Bidders are interested in separate individual Assets and/or all or substantially all of the Assets, the Trustee may conduct separate auctions for the various Assets and Asset packages.

No later than one calendar day after the Bid Deadline, the Trustee will notify each Qualified Bidder of the highest or otherwise best Qualified Bid or combination of Qualified Bids for each Asset or Assets, for which such Qualified Bidder submitted a Bid or combination of Bids, as determined in the Trustee's reasonable business judgment (the "**Baseline Bid**"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estate pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (d) the tax consequences of such Qualified Bid to the estates (collectively, the "**Bid Assessment Criteria**"). For purposes of determining the Baseline Bid, the Stalking Horse Bidder's bid shall be valued at $30 million.

The Auction, if necessary, shall take place at 10:00 a.m. (Central Daylight Time) on **June 22, 2020,** or such later date and time as selected by the Trustee, either (i) at the offices of Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, (ii) telephonically, (iii) via video conference, or (iv) a combination of the foregoing. If the location of the Auction is changed, the Trustee will file a notice at least 24 hours before the Auction indicating such change, and will serve the same on all Qualified Bidders and all parties who have requested notice pursuant to Local Rule 2002-1. The Auction shall be conducted in a timely fashion according to the following procedures:

    **(a)**    **The Trustee Shall Conduct the Auction.**

The Trustee and his professionals shall direct and preside over the Auction. The Auction will be fairly and evenly administered, and not intended to cause any participating Qualified Bidder to be disadvantaged in any material way with respect to the process as compared to any other participating Qualified Bidder. At the start of the Auction, the Trustee shall describe the terms of each Baseline Bid. All incremental Bids made thereafter for a given Asset shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Asset. The Trustee shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

10

Only the U.S. Trustee, Qualified Bidders and their legal and financial advisors, and the creditors of the Debtors (including, for the avoidance of doubt, the Prepetition Lenders) shall be entitled to attend the Auction, and the Qualified Bidders may speak or Bid themselves or through duly authorized representatives.  Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) shall be entitled to Bid at the Auction, unless the Trustee determines otherwise in the exercise of his fiduciary duties.  Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction in person.

**(b)     Terms of Overbid.**

"**Overbid**" means any Bid made at the Auction by a Qualified Bidder subsequent to the Trustee's announcement of the Baseline Bid.  Each applicable Overbid must comply with the following conditions:

(i)   **Minimum Overbid Increment.**  Any Overbid after and above the Baseline Bid or any subsequent Prevailing Highest Bid (as defined below) will be made in increments of at least $100,000.  In order to maximize value, the Trustee reserves the right to announce reductions or increases in the minimum incremental Bids (or in valuing such Bids) at any time during the Auction.  Additional consideration in excess of the amount set forth in the respective Baseline Bid may include cash or non-cash consideration; provided, however, that the value for such non cash consideration will be determined by the Trustee in his reasonable business judgment.

Notwithstanding the foregoing, (i) the Prepetition Lenders will be entitled to make an Overbid for the full amount of its potential Credit Bid regardless of the increment between such Bid and the then-current highest alternative bid and (ii) all bids must offer cash consideration in an amount sufficient (when taken together with unacquired cash-on-hand on the expected closing date of the transaction contemplated by such bid, as forecasted in good faith by the Trustee) to repay in full, in cash, the amount of the then-current Qualified Credit Bid.

(ii)  **Overbid Alterations.**  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Trustee's reasonable business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

(iii) **Conclusion of Each Overbid Round.**  Upon the solicitation of each round of applicable Overbids, the Trustee may announce a deadline (as the Trustee may, in his business judgment, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Trustee.

11

      (iv) **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Trustee shall announce whether the Trustee has identified an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Trustee as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Trustee shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Trustee as the Prevailing Highest Bid as well as the value attributable by the Trustee to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

   **(c)** **Consideration of Overbids.**

The Trustee reserves the right, in his reasonable business judgment, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Trustee and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Trustee with such additional evidence as the Trustee, in his reasonable business judgment, may require regarding whether the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

   **(d)** **Closing the Auction.**

      (i) The Auction shall continue until there is only one Bid that the Trustee determines, in his reasonable business judgment to be the highest or otherwise best Bid for such Asset. Such Bid shall be declared the "**Successful Bid,**" and such Qualified Bidder, the "**Successful Bidder,**" and at which point the Auction will be closed as to that Asset. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Trustee of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

      (ii) Notwithstanding the foregoing, any prepetition loan obligations that are credit bid as part of a Qualified Credit Bid will be treated as cash consideration at the face amount of such obligations for the purposes of calculating whether such Qualified Credit Bid is the Prevailing Highest Bid.

      (iii) The Trustee shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

      (iv) As soon as reasonably practicable after closing the Auction, the Trustee shall cause the Qualified Bid Documents for each Successful Bid and

Backup Bid to be filed with the Court.

**(e)    No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**(f)    Additional Procedures.**

The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, so long as such rules are not inconsistent in any material respect with the Bidding Procedures Order.

**10.    Backup Bidder.**

The Qualified Bidder with the next highest or otherwise second-best Qualified Bid (the "**Backup Bid**") at the Auction (if the Auction is conducted), as determined by the Trustee in the exercise of his business judgment, shall be required to serve as a backup bidder (the "**Backup Bidder**").  The Trustee shall announce the identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder after the conclusion of the Auction, if any, but no later than the Sale Hearing.  The Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the date (the "**Outside Backup Date**") that is the earlier of (a) the date that is ninety (90) calendar days after the date of entry of the Sale Order, or (b) the closing date of the Sale with the Successful Bidder.  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.  If a Successful Bidder fails to consummate its Successful Bid, the Trustee may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Trustee will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors' estates, and the Trustee specifically reserves the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

**11.    Adequate Assurance Information.**

Within twenty-four (24) hours of the filing of the notice of the Successful Bidder and the Backup Bidder, the Successful Bidder and the Backup Bidder will send by overnight delivery to each contract counterparty whose contract is part of such Bid, the financial and other commercial information to demonstrate adequate assurance of future performance under such contract.  For the avoidance of doubt, the lessors under the Debtors' mineral and surface leases are not required to receive such adequate assurance information.

**12.    Reservation of Rights.**

13

The Trustee reserves his rights to modify these Bidding Procedures in his reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

**13.    Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

**14.    Sale Hearing.**

The hearing to consider approval of the Sale of certain of the Assets to the Successful Bidder(s) pursuant to section 363 of the Bankruptcy Code (the "**Sale Hearing**") will take place **at 2:00 p.m. (Eastern Daylight Time) on June 24, 2020**, before the Honorable John T. Dorsey, at the Court, 824 N. Market Street, 5th Floor, Courtroom No. 5, Wilmington, DE 19801.

**The Sale Hearing may be continued to a later date by the Trustee by sending notice prior to, or making an announcement at, the Sale Hearing and filing such notice on the docket.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Trustee shall present the Successful Bid(s) to the Court for approval.

**15.    Return of Deposit.**

The Deposits of all Qualified Bidders will be held in one or more escrow accounts by the Trustee, but will not become property of the Debtors' estate, or subject to the claims, liens, security interests, or encumbrances of the Debtors' creditors, unless and until such amounts are actually released to the Debtors as provided herein, absent further Court order.  The Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder will be returned to such Qualified Bidder not later than five (5) business days after entry of the Sale Order.  The Deposit of the Backup Bidder, if any, will be returned to the Backup Bidder on the date that is the earlier of seventy-two (72) hours after (a) the closing of the Sale with the Successful Bidder, and (b) the Outside Backup Date.  Upon the return of the Deposits, their respective owners will receive any and all interest that will have accrued thereon.  If the Successful Bidder timely closes the Successful Bid, its Deposit will be credited towards the purchase price.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Trustee will not have any obligation to return the Deposit

deposited by such Successful Bidder, which may be retained by the Trustee on behalf of the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Trustee shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**16.    Reservation of Rights of the Trustee.**

Except as otherwise provided in the Bidding Procedures Order, these Bidding Procedures, or the Cash Collateral Order, the Trustee reserves the right, as he may reasonably determine to be in the best interest of the Debtors' estates to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best Bid or combination of Bids and which is the next highest or otherwise best Bid or combination of Bids; (d) reject any Bid (other than the Qualified Credit Bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, (iii) contrary to the best interests of the Debtors and their estates, or (iv) subject to any financing contingency or otherwise not fully financed; (e) waive terms and conditions set forth herein with respect to all bidders; (f) impose additional terms and conditions with respect to all Potential Bidders (other than the Stalking Horse Bidder); (g) extend the deadlines set forth herein; (h) continue or cancel the Auction or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures and implement additional procedural rules that the Trustee determines, in his reasonable business judgment, will better promote the goals of the bidding process.

**17.    Fiduciary Out.**

Nothing in these Bidding Procedures shall require the Trustee to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Trustee determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.